UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIAM J. WILCOX, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1-08-0030 |
| | ) | JUDGE HAYNES |
| | ) | |
| TRICAM INDUSTRIES, INC., and | ) | |
| RMM CORPORATION, d/b/a | ) | |
| TRICAM INTERNATIONAL | ) | |
| | ) | |
|    Defendants. | ) | |

## MEMORANDUM

Plaintiff, William J. Wilcox, a Tennessee citizen, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute, against the Defendants, Tricam Industries, Inc. and RMM Corporation d/b/a Tricam International, Minnesota corporations with their principal place of business in Eden Prairie, Minnesota, seeking damages under theories of strict liability, product liability based on negligence, and violation of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101, et seq.

This action proceeded to jury trial on October 20, 2009. Defendants were permitted to reserve their motions at the end of Plaintiff's case, and after both parties rested, Defendants moved for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. After argument the Court reserved its ruling on the Defendants' motion. RMM was dismissed as a defendant, and only the strict liability claim was submitted to the jury. On October 23, 2009, the jury returned a verdict in favor of Plaintiff and awarded Plaintiff $287,500 in compensatory damages.

Before the Court are Defendant Tricam Industries, Inc.'s motions for judgment as a matter of law (Docket Entry Nos. 76 and 77) and Plaintiff's response. (Docket Entry No. 84).

Defendant contends that Plaintiff did not offer evidence sufficient under <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) principles and Tennessee Products Liability Law to provide a legally sufficient basis upon which a reasonable jury could find in favor of Plaintiff under strict products liability. In response Plaintiff contends (1) that the Defendant has waived certain arguments by failing to include them in its oral pre-verdict trial motion for judgment as a matter of law; (2) that the Defendant's <u>Daubert</u> challenges fail because this is the first time the Defendant has made such challenges; and (3) that all of Defendant's arguments ultimately fail because there is sufficient evidence in the record to support the jury's verdict.

For the reasons set forth below, the Court concludes that the Defendant's motions should be denied.

## I. JUDGMENT AS A MATTER OF LAW

When considering a motion for judgement as a matter of law under Rule 50, a court should review all of the evidence in the record. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). However, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Id.</u> "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Id.</u>

The Sixth Circuit has held that in a diversity case where a Rule 50 motion challenges the sufficiency of the evidence, a court applies the standard of review of the state whose substantive law governs the matter. <u>American Trim, LLC v. Oracle Corp.</u>, 383 F.3d 462, 471 (6th Cir. 2004) (citing

2

Morales v. Am. Honda Motor Co., 151 F.3d 500, 506 (6th Cir. 1998)). Because Tennessee substantive law governs in this case, this Court applies Tennessee's standard of review.

> The standards governing trial courts in ruling on motions for directed verdict or JNOV . . . are well established. In ruling on the motion, the court must take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied.

Lativafter Liquidating Trust v. Clear Channel Communications, Inc., 345 Fed. Appx. 46, 49 (6th Cir. 2009) (citing Potter v. Ford Motor Co., 213 S.W.3d 264, 267-68 (Tenn. Ct. App. 2006)) (citation omitted). Further, "'[i]f there is material evidence to support the jury's findings, then, of necessity, granting a directed verdict for the losing party would have been improper because the evidence permitted reasonable minds to reach a conclusion different from that asserted by the losing party.'" Potter, 213 S.W.3d at 268 (citation omitted).

Rule 50(a)(2) provides that a motion for judgment as a matter of law "may be made at any time before the case is submitted to a jury" and that the motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Rule 50(b) applies to a renewal of a motion for judgment as a matter of law if the court does not grant the motion and submits the case to the jury. Yet, "a post-trial motion for judgment as a matter of law 'is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury.'" Ford v. County of Grand Traverse, 535 F.3d 483, 491 (6th Cir. 2008) (citing Am. & Foreign Ins. Co. v. Bolt, 106 F.3d 155, 160 (6th Cir. 1997)).

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion

3

informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Ford, 535 F.3d at 491-92 (quoting the Advisory Committee Note to the 2006 Amendment to Rule 50).

## II. CONCLUSIONS OF LAW

### A. JAMES WITTIG

The Defendant challenges the testimony of Professor James Wittig. Defendant contends Plaintiff failed to provide the jury with legally sufficient information for it to apply the state of scientific and technological knowledge available to the manufacturer at the time the product was placed on the market rather than at the time of injury. As to specifics, Defendant asserts that Wittig conceded that the metal used in the accident ladder was 6063-T5, as specified by Defendant, but did not testify that the accident ladder would fail any test protocol under ANSI Standard. The Defendant also contends that Wittig did not perform any tests or calculations to support his conclusion that the metal's high oxygen content contributed to the ladder leg's failure; that Wittig did not create an exemplar utilizing his alternative design of moving the rivet hole away from the front of the ladder's leg; and that Wittig was unable to state that the chemical analysis he asserted should be used by Tricam, was "knowledge available to Tricam when the ladder was manufactured."

To be sure, Wittig referred to the aluminum used in the accident ladder as 6063-T5, and his supplemental report concluded that "mechanical testing in this investigation shows that the aluminum 6063 T5 aluminum used for the Tricam ladders does not exhibit typical properties for this alloy. The strength is too high and the ductility is too low." (Docket Entry No. 85, Attachment 5

4

at 11). Clearly, Wittig's report reflects his opinion that the ladder's aluminum was consistent with defined parameters of 6063-T5.

As to the Defendant's contention that Wittig did not perform any tests or calculations to support his conclusion that high oxygen content contributed to the ladder leg's failure, Plaintiff responds that Wittig performed numerous tests and calculations. Wittig's report shows that samples from the accident ladder, an exemplar Tricam ladder purchased at the same time as the accident ladder and reference material of extruded 6063-T5 aluminum purchased locally, were analyzed for their alloy composition and mechanical properties. (Docket Entry No. 85, Attachment 2 at 8). Chemical composition measurements and mechanical property testing were conducted. Id. at 9. The mechanical property testing involved tensile tests where dog-bone style samples were stretched until the samples fractured, resulting in the percent elongation to failure of the three aluminum materials.

In conjunction with his testing, Wittig relied on testing conducted by Professor Carol Rubin who produced a "simple finite element model to assist with understanding the stress state near the hole where the Wilcox ladder failed." Id. at 10. Using computer models, Wittig's report is that "simulations were done for the location of the holes in the Tricam Gorilla ladders in cases 1, 2, and 3, and in cases 4, 5, and 6 the holes were located in the center of the section, i.e., the neutral axis." Id. These tests revealed a comparative analysis of the tensile stresses "at the position where the fatigue crack initiated in cases 1-3 and for the outer surface of the hole if it was positioned on the neutral axis in the center of the ladder leg section." Id.

As to the Defendant's criticism of Wittig's failure to create an exemplar utilizing his alternative design of moving the rivet hole away from the front of the ladder's leg, Plaintiff argues

5

that Tennessee law does not require a plaintiff to introduce evidence of an alternative design, to prove his claim.

In Potter, the defendant argued that to establish liability for a defective product, the plaintiff had to prove "'the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm.'" 213 S.W.3d at 269 (citing Martin v. Michelin North America, Inc., 92 F. Supp 2d 745, 753 (E.D. Tenn. 2000)). The Potter court disagreed, stating that "no court has subsequently cited [Martin] for the proposition that a showing of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm is *always* required as an element of a plaintiff's prima facie case." Id. (emphasis in original). Although the Tennessee Court of Appeals acknowledged that "evidence of a technologically feasible and practical alternative design that likely would have reduced or prevented plaintiff's harm [would] always be highly relevant and probative of the issue of whether a product was defective or unreasonably dangerous," id., the Tennessee appellate court concluded that Tennessee products liability law does not require such evidence. Although the Plaintiff's expert proof in Potter cited other alternative designs in the market, id. at 270, the concurring opinion stated that Tennessee has not adopted the Third Restatement of Torts that proof of an alternate design is mandatory. Id. at 277. Thus, Plaintiff's lack of proof of an alternative safe design is not required by Tennessee law.

Plaintiff next argues that Defendant's pre-verdict Rule 50(a) motion at trial did not include the Defendant's contention about Wittig's inability to state that his proposed chemical analysis was "knowledge available to Tricam when the ladder was manufactured." Thus, Plaintiff contends that the Court cannot consider it now. The Court agrees. See Ford, 535 F.3d at 491-92.

6

Accordingly, viewing the evidence in favor of Plaintiff as the non-moving party, the Court concludes that the Defendant's challenges to Wittig's testimony does not warrant relief.

### B. JOHN SCHWARTZBERG

The Defendant next argues that Schwartzberg did not perform any tests, make any calculations or create an exemplar to support Plaintiff's design defect theory and therefore Schwartzberg's testimony does not provide a legally sufficient basis upon which a reasonable jury could find in favor of Plaintiff for his design defect theory under strict products liability. The Defendant also challenges Schwartberg's testimony that during the manufacturing process, the Defendant should have chemically tested the metal used for the legs because Schwartzberg did not state when during the manufacturing process, the chemical testing should occur. The Defendant also argues that Schwartzberg has not designed a ladder, worked for a ladder manufacturer, or observed the manufacture of a ladder and his critique of the manufacturing process is only that of a "generalist."

As stated previously, Tennessee law does not require a products liability plaintiff to make any showing of an alternative design, tested or otherwise. See Potter, 213 S.W.3d at 269-70. Further, Fed. R. Evid. 703, provides that "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Here, Schwartzberg's opinion of the tests and calculations were based upon Wittig's and Rubin's testing. In any event, Schwartzberg's testimony was more relevant on the negligence claim that was dismissed and was not as material to the jury's verdict on Plaintiff's strict liability claim that was supported by Wiitig and Rubin's conclusions. For these reasons, the Court concludes that this contention is without merit.

## C. CAROL RUBIN

The Defendant argues that Professor Carol Rubin's analysis was inadequate under Daubert. The Defendant argues that Rubin did not perform any actual stress tests to any of the four legs of the ladder to confirm that the information which she inserted into the FEA program was valid. The Defendant asserts that if Rubin's analysis is incorrect, then Dr. Wittig's theory of fatigue failure lacks support.

Plaintiff contends that the crux of the Defendant's argument contests the substance of Rubin's analyses rather than the sufficiency of her analyses finding a product defect. Plaintiff contends that the Defendant disagreed with Rubin's analyses and through its experts challenged her testing and some of her fundamental assumptions. Plaintiff argues that the Defendant does not contest that Rubin's expert opinion, if true, could support a finding of product defect given Wittig's conclusions.

The Court agrees with the Plaintiff that the Defendant asks the Court to substitute its judgment for the jury's. The Defendant's experts challenged Rubin's analyses and assumptions. The jury evidently credited Plaintiff's experts over the Defendant's. Thus, there was material evidence to support the jury's findings.

As to the Defendant's Daubert challenge, Plaintiff argues that the Defendant did not make a Daubert challenge of Rubin before the Rule 50 motions, and therefore the Court cannot consider the challenge to Rubin's testimony on the Defendant's pending Rule 50 motions. The Court agrees.

In Weisgram v. Marley Co., 528 U.S. 440 (2000), the Supreme Court stated:

> Weisgram relies on cases holding that, in fairness to a verdict winner who may have relied on erroneously admitted evidence, courts confronting questions of judgment as a matter of law should rule on the record as it went to the jury, without excising evidence inadmissible under Federal Rule of Evidence 702. These decisions are of

questionable consistency with Rule 50(a)(1), which states that in ruling on a motion for judgment as a matter of law, the court is to inquire whether there is any "legally sufficient evidentiary basis for a reasonable jury to find for [the opponent of the motion]." Inadmissible evidence contributes nothing to a "legally sufficient evidentiary basis."

Id. at 453-54 (citations omitted). To be sure, the Sixth Circuit distinguished Weisgram in Karam v. Sagemark Consulting, Inc., 383 F.3d 421 (6th Cir. 2004), stating:

There are two problems with the district court's analysis. The first is that Weisgram is probably not controlling on this issue because the defendant in Weisgram *objected* to the admission of the evidence in question. . . . [Defendant] Sagemark, in contrast, allowed the family members' testimony to be admitted without objection. In the absence of a timely objection, such testimony is generally not considered to be "erroneously admitted." See Fed. R. Evid. 103(a)(1).

Id. at 427 (citations omitted) (emphasis in original).

Rule 103(a)(1) of the Federal Rules of Evidence provides that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . ."

Here, the Defendant did not make a Daubert challenge in its pre-trial motions nor at the introduction of the expert testimony at trial. Thus, the evidence was admitted without objection and therefore without error. Accordingly, such evidence was considered by the jury and it must now be accepted by the Court.

### **D. DENNIS SIMPSON**

The Defendant next asserts that Plaintiff did not elicit any testimony from Dennis Simpson – or any other witness – that the method by which the Defendant's ladders are manufactured vary from any other ladder manufacturer's manufacturing and testing process.

9

Plaintiff responds that the Defendant essentially challenges Plaintiff's failure to introduce evidence about other ladder manufacturers' practices, but fails to cite any case law that this proposition is required under Tennessee product liability law. Plaintiff argues that under Tenn. Code Ann. § 29-28-105, such proof is not required, but renders such proof relevant on the factual determination of defect.

The Court agrees. Tennessee Code Ann. § 29-28-105(b) states that "**Consideration** is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." (emphasis added). Thus, whether the method by which Defendant's ladders were manufactured varied from any other ladder manufacturer's manufacturing and testing process is only an evidentiary factor for the jury to consider on whether a product is defective. Accordingly, this contention fails.

### E. PLAINTIFF'S EXPERTS' PROOF ON DESIGN/MANUFACTURING DEFECTS AND PROXIMATE CAUSE

The Defendant asserts that Plaintiff did not prove that the alleged design and manufacturing defects alone or in combination were the proximate cause(s) of Plaintiff's accident. The Defendant also asserts that Plaintiff's experts did not perform any tests or create any exemplars to test their alternative design theory, citing Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426 (6th Cir. 2007) in support. The Defendant further asserts that Plaintiff's experts' opinions that the Defendant should have performed some unspecified chemical analysis of the ladder's legs at some undetermined time during the manufacturing process are inadmissible under Daubert. Plaintiff asserts that the Defendant's claims are barred by Ford and that the Defendant's Daubert challenges cannot be considered by the Court for the first time on a Rule 50 motion.

10

The Defendant's argument on proximate cause was not included in its pre-verdict Rule 50(a) motion, and therefore, the Court cannot consider this challenge now. Ford, 535 F.3d at 491-92.

The Defendant's final two arguments are Daubert challenges that are submitted for the first time. Plaintiff's reliance on Johnson is inapposite as there, the defendant moved to strike the plaintiff's expert's testimony during pretiral proceedings. Here, the Defendant did not make any Daubert challenges until its Rule 50 motions. For the reasons stated above, this contention is without merit.

### III. CONCLUSION

Accordingly, for these reasons, the Defendant's motions for judgment as a matter of law (Docket Entry Nos. 76 and 77) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 21st day of May, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge